IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **DAVID BILFELD,** Plaintiff, vs. **TOWN & COUNTRY RESTAURANT LLC, ETHAN HUDSON, INC.,** and **BRIAN ELDRIDGE,** Defendants. | 09 C 7742 Judge Dow Magistrate Judge Schenkier |

## APPLICATION FOR DEFAULT JUDGMENT

Plaintiff David Bilfeld, by his attorneys, presents evidence in support of his application for entry of a default judgment against the three defendants who have already been found to be in default:

The plaintiff's Amended Complaint alleges that plaintiff David Bilfeld invested $100,000 in Town & Country Restaurant LLC (the "LLC") upon the following express promise on the first page of the LLC's Confidential Offering Memorandum:

> The proceeds of this Offering shall be deposited in a non-interest bearing account of the LLC and shall not be used by the LLC until the later of the date that (A) at least 120 Preferred Units have been subscribed for ($1,200,000 raised) and (B) the LLC has entered into a satisfactory lease for the proposed space ("Proposed Space) for the restaurant to be owned by the LLC at 525 W. Monroe, Chicago, IL 60661.

As described in the attached Affidavit of David Bilfeld (Exhibit A), on March 7, 2008, David Bilfeld gave his $100,000 check payable to Town & Country Restaurant LLC to purchase one $100,000 Preferred Unit in the LLC in reliance on the promise in the LLC's Confidential Offering Memorandum (Excerpts attached as Exhibit B, B-1) that his subscription payment would be safely kept in a non-interest bearing bank account until the LLC raised at least $1,200,000 in subscriptions. David Bilfeld gave the Check to Brian Eldridge, who controlled the LLC.

David Bilfeld's $100,000 check to Town & Country Restaurant LLC (the "Check") dated March 7, 2008, was deposited into an account at J.P. Morgan Chase Bank, N.A on March 11, 2008:

[Image of check from David Bilfeld, 333 N. Jefferson St. Apt 606, Chicago, IL 60661, No. 1220, dated 3-7-08, Pay to the order of Town & Country Restaurant LLC, $100,000.00, One Hundred Thousand and 00/100 Dollars, drawn on LaSalle Bank N.A., Chicago IL 60603, signed, with JPMorgan Chase Bank deposit stamp dated 03/11/2008.]

The LLC thereafter refused to provide the plaintiff with information concerning the status of its business operations. On November 12, 2009, plaintiff's counsel demanded the return of David Bilfeld's $100,000 subscription, together with information concerning the status of the subscriptions. (Nov. 12, 2009 Letter, Exhibit C.) The LLC ignored the request and did not return the $100,000 subscription payment, leading to this litigation.

2

Plaintiff subpoenaed J.P. Morgan Chase Bank, N.A. ("Chase Bank") for records concerning the account into which the Check was deposited and the defendants' other accounts. In response, Chase Bank sent some of the records which show that the entirety of David Bilfeld's $100,000 investment was promptly squandered, and was not held in a safe non-interest bearing account. In particular, Chase Bank produced account information and statements of the checking and savings accounts into which the Check was deposited. Chase Bank's certification is attached as Exhibit D.

The back of the March 7, 2008 Check shows that it was deposited into Checking Account 766352314. Chase Bank's first Statement for that account shows that Checking Account 766352314 was opened on March 11, 2008 with a $90,000 deposit. (Exhibit E, March 31, 2008 Statement.) The March 31, 2008 Statement shows that the ending balance was $60,845.01, with $28,900 in checks paid.

Chase Bank's records also show the March 11, 2008 deposit of $10,000 into High Yield Savings Account 2901900528. (Exhibit E, p.5) This is the remaining $10,000 from David Bilfeld's $100,000 Check.

The April 2008 Checking Account Statement (Exhibit F, Q2 2008 Statement) shows that during April 2008, $17,914.18 was withdrawn from the Checking Account by ATM and Debit Card withdrawals. The Statement lists withdrawals showing use of David Bilfeld's money for personal items, including gasoline purchases, parking fees, car rentals, meals, airplane tickets, and hotel rooms in

3

Philadelphia. (Exhibit F, p. 3-5) By the end of April 2008, the Checking Account balance was $23,372.84.

The spending continued as shown on the May 2008 Statement (Exhibit F), with more expensive meals, airplane tickets, and grocery purchases paid from the Checking Account, with a $1.99 purchase at Starbuck's Coffee on May 2, 2008. (Exhibit F, p. 11-12)

The June 30, 2008 Statement (Exhibit F) shows a starting balance of $6,340.81, but new deposits of $133,550. (Exhibit F, p.17) The spending continued unabated through July 2009. (Exhibit G, Q3 2008 Statement) By the end of August 2008, the Checking Account was overdrawn by $370.23 and all but $6.02 remained in the Savings Account. In subsequent months, there were modest deposits and continued spending until the account was closed during August 2009. (Exhibit H, Q4 2008; Exhibit I, Q1 2009; Exhibit J, Q2 2009; Exhibit K, Q3 2009.) We do not have copies of the checks written on the account.

The Statements show that the LLC received David Bilfeld's $100,000 subscription payment and the entirety of the payment was promptly spent in violation of the Confidential Offering Memorandum, which required payment of $1.2 million before the LLC spent any of the subscription proceeds.

Defendant Brian Eldridge personally controlled the operations of the LLC and Ethan Hudson Inc. Mr. Eldridge admits in the attached e-mail messages (Exhibits L and L-1) that he intentionally spent the money invested by plaintiff

4

David Bilfeld before the required $1.2 million was raised.  Even if defendant Eldridge spent the subscription proceeds exclusively on the LLC's business operations, that is not a defense.  The defendants unequivocally promised in the Offering Memorandum that no subscription proceeds would be spent until the LLC raised at least $1.2 million.  Brian Eldridge's June 22, 2010 e-mail message (Exhibit L-1) acknowledges that he understood and knew he was not to spend any of the subscription payments until he raised $1.2 million.  Defendants blatantly violated the terms of the Offering Memorandum by spending all of plaintiff David Bilfeld's $100,000 subscription proceeds.  At the time Eldridge started writing checks and making dozens of debit card withdrawals on the LLC's Checking Account, David Bilfeld was the only subscriber, and the LLC spent all of plaintiff David Bilfeld's subscription proceeds before raising $1,200,000.  The restaurant project was never realized.

The plaintiff requests entry of a judgment order impressing a constructive trust upon the plaintiff's wrongfully converted $100,000 investment, with a judgment and an award of punitive damages.

The plaintiff also requests relief under section 13 the Illinois Securities Act, 815 ILCS 5/13 for the defendants' violations of section 12 of the Act.  In particular, section 12 states in pertinent part:

> Sec. 12. Violation. It shall be a violation of the provisions of this Act for any person:
> ***
>    F. To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or

deceit upon the purchaser or seller thereof.

G. To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. ***

I. To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

Section 13 of the Act provides the following pertinent remedies for violation of the Act:

Sec. 13. Private and other civil remedies; securities.

A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter or dealer is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser as follows:

(1) for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale; ***

If the purchaser shall prevail in any action brought to enforce any of the remedies provided in this subsection, the court shall assess costs together with the reasonable fees and expenses of the purchaser's attorney against the defendant.

The plaintiff attaches a proposed Judgment Order detailing the relief requested, with findings of fact and conclusions of law.

**Wherefore**, plaintiff David Bilfeld prays that the Court enter a judgment against the defendants, jointly and severally, upon plaintiff's Application For Default Judgment.

                                             **DAVID BILFELD,** Plaintiff

                                             By: _/s/ Donald F. Spak_
                                                   One of His Attorneys

Donald F. Spak
180 North LaSalle St., #1801
Chicago, IL 60601
(312) 214-1818
Attorneys for Plaintiff David Bilfeld